## T. W. SOMMER COMPANY, INC., AND ANOTHER v. MODERN DOOR AND LUMBER COMPANY AND ANOTHER.

198 N. W. 2d 278.

June 2, 1972—No. 43223.

*Shear & Rooney* and *Thomas J. Rooney,* for appellants.
*Donald C. Lentsch,* for respondent Prettyman.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the district court denying plaintiffs' motion for a new trial.

The case arises out of a business transaction between the two

corporate plaintiffs and defendant Don I. Prettyman. Defendant Modern Door and Lumber Company (hereinafter Modern Door) was a wood fabricator. Defendant Don I. Prettyman was an officer of Modern Door and during the time involved here owned 40 percent of its outstanding stock. His father owned 51 percent of the stock and one Arlin J. Erickson owned the remaining 9 percent. All of the stock of both corporate plaintiffs was owned by Terence G. Sommer.

There is evidence that Sommer and Don Prettyman had been good friends for a number of years. Apparently, both Modern Door and the plaintiff corporations were having some financial difficulties. In September 1967 Modern Door suffered substantial losses due to a fire which destroyed not only some of its buildings but about six truckloads of lumber which had been delivered to it by plaintiffs shortly before the fire. These truckloads were worth somewhere between $24,000 and $36,000. Thereafter, Modern Door began liquidating its inventory under the supervision of James Talcott, Inc., a finance company which had substantial notes and liens against Modern Door's inventory.

After the fire, Modern Door remained indebted to plaintiff companies in amounts approximating or exceeding $50,000. The amount was reduced somewhat between September 1967 and September 1968. In 1968, two promissory notes were executed by Modern Door, one in the sum of $12,000 to Lance Imports, and one in the sum of $24,000 to T. W. Sommer Company. There is considerable dispute in the record as to whether these notes were intended to encompass the entire indebtedness of Modern Door to plaintiffs, or whether they were intended to extend the time of payment as to part of the indebtedness in order to give Modern Door more time to pay its obligations. In spite of the fact that there appears much testimony in the record on this question—Sommer claiming that even after the execution of the notes plaintiffs carried part of Modern Door's obligations on the books as bills receivable, and Prettyman claiming that the notes represented the entire amount owed to plaintiffs—no one at-

tempted to produce or to require the production of the books of any of the corporations, and there was no objection to testimony of witnesses on the ground that it was not the best evidence or on any other ground. But it is probably immaterial which version was correct as far as this case is concerned, except that it might have been relevant as to credibility of the witnesses on the issues that are involved.

The dispute arises over the signature on the back of notes purporting to guarantee the obligation of Modern Door by Mr. Prettyman personally. The claim of Sommer is that this guaranty was unqualified. The claim of Prettyman is that it was intended only as an accommodation for Sommer so he could procure a loan from the Liberty State Bank and that it was not intended to assume the obligations of Modern Door personally as far as plaintiffs were concerned.

It appears from the record that repeated attempts were made by Sommer to induce Prettyman and his father to sign personal guaranties of the corporate debts, but these attempts were unsuccessful except for one occasion when Prettyman and his father signed a guaranty of the corporate debts contingent upon their procuring some refinancing which was never consummated. It is conceded by everyone that in the light of their failure to complete the refinancing that guaranty was invalid.

In any event, on September 3, 1968, Prettyman and Sommer went to the Liberty State Bank together. There is some dispute as to whether the first two notes of Modern Door were signed prior to going to the bank and the guaranty signed at the bank, or whether the notes and guaranty were signed at the same time; but while at the bank, two new notes covering the same obligation were prepared by the bank and signed by Prettyman as an officer of Modern Door and signed by him on the back as guarantor. It is these two notes upon which the present suit is predicated.

The question involved here is whether Prettyman as guarantor is personally liable on these notes or whether he signed as an

accommodation party for the payees and is therefore not liable to the person accommodated. The trial court found that Modern Door was liable on the notes but that Prettyman individually was not. Two questions are presented: Does the evidence sustain the court's findings? Must the defense that Prettyman was an accommodation party only be specially pleaded in the answer, and, if so, has the issue been litigated by consent?

Minn. St. 336.3—415 defines an accommodation party as follows:

"(1)  An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

"(2)  When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.

"(3)  As against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such. In other cases the accommodation character may be shown by oral proof.

"(4)  An endorsement which shows that it is not in the chain of title is notice of its accommodation character.

"(5)  An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party."

There is no claim that plaintiffs are holders in due course. Whether the court's finding that Prettyman signed the guaranty as an accommodation for the payees of these two notes is sustained by the evidence depends almost wholly on whether the testimony of Sommer or that of Prettyman is accepted. We think the court, as the trier of facts, had the right to rely on the testimony of Prettyman.

There are several things that would support Prettyman's testi-

mony. At the time the guaranty was signed, Modern Door was in the process of liquidation. It did very little business after the fire in 1967. The liquidation was under the control of James Talcott, Inc., and it would be somewhat doubtful whether Prettyman under these circumstances would assume liability of the notes to the payees. His testimony is that he guaranteed the notes to enable Sommer to obtain a loan from the bank for his own personal use and not otherwise. The trial court accepted that version of the transaction, and we are compelled to accept the evidence most favorable to this finding. From this it follows that the court's findings are amply sustained by the evidence.

The only other question is whether it was essential to plead the defense that Prettyman was an accommodation party only for the payees and was therefore exempt from liability to the payees under § 336.3—415(5).

Rule 8.03, Rules of Civil Procedure, provides in part:

"In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and *any other matter constituting an avoidance or affirmative defense.*" (Italics supplied.)

It is the contention of plaintiffs that under the italicized portion of the above rule it is necessary specifically to plead the defense that defendant Prettyman signed the guaranties of the notes as an accommodation for the payees. Irrespective of whether it is necessary specifically to plead this defense, we think it is clear that the issue was tried by consent. In his opening statement to the judge, counsel for Prettyman said:

"* * * [I]t is the Defendant Don Prettyman's contention that the notes referred to were executed as an accommodation for the Plaintiff, executed by him on the reverse side, in the

guarantee section of the note, and this was known to the plaintiff that this was a qualified and limited endorsement and that it can't be used against him as guaranteeing the entire note for any other purpose.

"The testimony will show that the two of them went to the Liberty State Bank for the sole and express purpose of borrowing money for Mr. Sommer personally, and that these notes were signed at the bank."

Practically the entire record consists of testimony of the witnesses, mainly Sommer and Prettyman, as to the purpose for which the guaranty was signed. The evidence was admitted by both parties without objection. In Roberge v. Cambridge Co-op. Creamery Co. 243 Minn. 230, 234, 67 N. W. 2d 400, 403 (1954), we said:

"* * * Issues litigated by either express or implied consent are treated as if they had been raised in the pleadings. Consent is commonly implied either where the party fails to object to evidence outside the issues raised by the pleadings or where he puts in his own evidence relating to such issues. The question must, of necessity, be decided on the particular facts of each case."

In the present case, not only did defense witnesses testify at length regarding the purpose behind the signing of the guaranty, but plaintiffs' witness, as well, thoroughly explored this issue. No objection was made by counsel for either party to such evidence.

We are therefore convinced that the evidence sustains the court's findings that Prettyman individually signed the guaranty on the back of the two notes for the accommodation of the payees, and as such he is not liable to the payees. There is no question that the corporate defendant Modern Door is liable to the payees and that, had suit been brought on the guaranty by the bank as holder of the notes as collateral to a loan to Sommer, Prettyman would be liable to the bank. We are convinced that

the issue as to whether a guaranty was signed as an accommodation for the payees was tried by consent, and we need not determine whether under Rule 8.03 it was necessary expressly to plead it.

Affirmed.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.

MR. JUSTICE MACLAUGHLIN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.